## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 16 2020, 6:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nelson J. Waller,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | January 16, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2122<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Wendy W. Davis, Judge<br><br>Trial Court Cause No.<br>02D04-1812-F5-396 |

**Brown, Judge.**

[1] Nelson J. Waller appeals his convictions for two counts of dealing in cocaine or a narcotic drug as level 5 felonies. We affirm.

*Facts and Procedural History*

[2] Fort Wayne Police Detective Craig Wise began investigating narcotics in 1994 and has been involved in thousands of such investigations, which include the use of confidential informants to conduct undercover controlled purchases.

[3] On September 28, 2017, he made arrangements with a confidential informant (the "CI") to conduct a controlled purchase at a gas station. Prior to the purchase, he searched the CI, fit him with a properly-working electronic transmitting device, provided him with $100, and drove him to the location. A white Malibu with a male black driver pulled into the gas station, the CI approached the vehicle, returned, and re-entered Detective Wise's vehicle. After about five minutes, Waller arrived in a second white Malibu, parked one pump over from Detective Wise's vehicle, and entered the gas station building while wearing a blue hoodie and tan pants. The CI followed Waller inside. The pair "just stepped inside" the door, and the CI handed Waller the money. Transcript Volume I at 50. Within sight of Detective Wise, who was listening to the transmission, Waller shared with the CI that, when he tried to enter the first white Malibu, he had "freaked out" Waller's supplier, who Waller was meeting "to get it from." *Id.* Waller instructed the CI to wait in Waller's vehicle while he went "to go get into the other white Malibu." *Id.* A few minutes later, Waller entered his vehicle and explained to the CI that he had wanted "to leave when he was in the door" and "go somewhere to cut it up"

because he did not "really like to do this in the car." *Id.* at 51.  After exiting Waller's vehicle, the CI returned to Detective Wise's vehicle with a small plastic package containing fentanyl and placed it in a cup so that the detective did not have to touch it.

[4]     On October 10, 2017, Detective Wise met the CI, searched him to ensure he did not have any weapons, guns, money, or drugs, wired him with a properly-working electronic transmitting device, and provided him with $100 of prerecorded buy money.  He drove the CI to a specified location.  When they arrived, Waller stood beside a white Malibu.  The CI met Waller in front of Detective Wise's vehicle, Waller handed him a package containing fentanyl, and he gave Waller the money.  The CI returned the package to Detective Wise, and they drove away.

[5]     The State charged Waller with two counts of dealing in cocaine or a narcotic drug as level 5 felonies.  At the jury trial, Detective Wise testified to the use of confidential informants, explained controlled purchases, detailed the pre-purchase procedure of searching confidential informants for money and drugs and wiring them with electronic transmitting devices, and described the post-purchase process of receiving the drugs.  He testified about the first controlled purchase and indicated that he knew about Waller's comment to the CI after receiving the money because he was "listening on the seven radio, listening to the conversation." *Id.* at 50.  He indicated that the CI did not have any narcotics when he exited the vehicle, had narcotics when he re-entered it, and was in the line of sight while the electronic device was transmitting.  He

testified that he was listening to the transmission "while everything was going on." *Id.* at 52. When asked how close the second white Malibu was to his vehicle, he stated "[f]rom me to you," he indicated that he could clearly identify the male driving that vehicle, and he pointed to Waller when asked to point to the individual who sold drugs to the CI that day. *Id.* at 56. The court admitted an audio recording from the first controlled purchase as State's Exhibit 1 and published it to the jury. It admitted the fentanyl purchased that day as State's Exhibit 2, and the parties stipulated that it weighed .27 grams.

[6] Detective Wise testified about the second controlled purchase, indicated that it occurred in the open and that he could see Waller through the front windshield, and when asked about the distance from where Waller stood to Detective Wise's vehicle, stated "[a]bout where you are." *Id.* at 60. He answered affirmatively when asked if he searched the CI and knew that the CI did not have any contraband on him and when asked if all the CI had on him was the $100 of prerecorded buy money. He testified that, after the controlled buy, the CI had a baggie of suspected fentanyl and did not have the money. The court admitted an audio recording from the second purchase as State's Exhibit 3 and published it to the jury. It admitted the fentanyl purchased that day as State's Exhibit 4, and the parties stipulated that it weighed .38 grams.

[7] The jury found Waller guilty as charged, and the court sentenced him to five years, with two years suspended, for each count to be served concurrently.

*Discussion*

The issue is whether the evidence is sufficient to sustain Waller's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

Ind. Code § 35-48-4-1 provides that a person who "knowingly or intentionally . . . delivers . . . cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II" commits dealing in cocaine or a narcotic drug, a level 5 felony.

Waller maintains that, absent the testimony of the CI that he delivered the drugs which were turned over to Detective Wise, there was not sufficient evidence to sustain his convictions. He contends that Detective Wise did not actually see any delivery take place despite his testimony that the October 10, 2017 transaction occurred in front of his car as he was watching.

The State responds that the evidence of the properly conducted controlled buys was sufficient to prove Waller's crimes without needing testimony from the confidential informant and that, in looking at the totality of the evidence, sufficient probative evidence existed by which a reasonable fact-finder could have found Waller guilty. It argues that, because the CI was under constant

and complete surveillance, Detective Wise had first-hand knowledge of what he heard and observed while the transactions took place.

[12] The record reveals that Detective Wise searched the CI before each controlled purchase to ensure that he did not have any contraband or narcotics. After meeting with Waller and providing him with prerecorded purchase money, the CI returned to Detective Wise with fentanyl on both occasions. As the controlled purchases were being conducted, the CI wore a properly-working electronic transmitting device and remained within Detective Wise's sight. Detective Wise was able to see or hear him at all times. Based upon our review of the testimony and evidence as set out above and in the record, we conclude that the State presented evidence of a probative nature from which a trier of fact could find beyond a reasonable doubt that Waller dealt in cocaine or narcotic drugs.

[13] For the foregoing reasons, we affirm Waller's convictions.

[14] Affirmed.

Baker, J., and Riley, J., concur.